[L. A. No. 3134. Department One.—May 8, 1913.]

## LEVI McCORMICK, Respondent, v. ANNORA MARCY, Appellant.

Deed—Covenant of Seizin—Time of Breach.—The breach of a covenant of seizin contained in a deed of land to which the grantor never had any title occurs at the time it is made.

Id.—Covenant for Quiet Enjoyment — Time of Breach — Eviction Under Paramount Title—Statute of Limitations.—There is no breach of a covenant for quiet and peaceable possession of land until there has been an eviction by the true owner, or an assertion by him of his paramount right in such a manner that the holder through the covenantor is compelled to yield possession or buy the outstanding superior title. The statute of limitations upon an action for breach of this covenant begins to run only from the time of such breach.

Id.—Measure of Damages—Price Paid Grantor—Conveyance by Covenantee for Less Price.—Under section 3304 of the Civil Code, the price paid to the grantor constitutes one of the elements of the measure of damages for a full breach of a covenant of quiet enjoy-

ment, and it remains such, notwithstanding the covenantee, prior to the breach, had conveyed the land, with a similar covenant, for a less consideration, and after the breach had settled with his grantee for a corresponding lesser amount.

Id.—Action for Possession by Holder of Paramount Title—Demand on Covenantor to Defend—Voucher to Warranty—Judgment Conclusive on Covenantor.—Where a covenantee in a deed containing a covenant to warrant and defend the quiet and peaceable possession, or one who derives title to the land from him, is sued for possession by a person claiming a paramount title, the defendant may give notice of the suit to any previous covenantor under whom he derives title and request him to come in and defend the title he warranted. This proceeding is called a "voucher to warranty." The covenantor so vouched in may then appear in the action and defend the same, and whether he appears or not, he is bound by the judgment rendered in the action. It is conclusive upon the person thus vouched in, with respect to the superiority of the adverse title asserted by the plaintiff in the action.

Id.—Tenants in Common—One may Recover Possession of Entire Estate—Eviction as to Entire Land—Complete Breach of Covenant.—One tenant in common may recover possession of the whole estate against all persons except his cotenants, and his recovery inures to the benefit of his cotenants. Consequently, a judgment for the possession of the entire land embraced in such a deed, rendered in favor of two of three tenants in common who held the paramount title, operated as an eviction of the entire land, and as a complete breach of the covenant.

Id.—Estoppel of Covenantor to Impeach Judgment of Ouster.—A covenantor, who was regularly vouched to warranty in an action to recover the possession from a grantee of her covenantee, and who failed to respond, cannot, in a subsequent action for breach of the warranty instituted by her immediate covenantee, impeach the judgment of ouster by urging defenses which might have been made in the action for the possession.

Id.—Attorney's Fees in Defending Action for Possession.—In an action by the covenantee to recover damages for the breach of the covenant, attorney's fees, properly incurred in defending the action for possession instituted by part of the tenants in common holding the paramount title, are recoverable, notwithstanding the failure of the covenantee and his grantee to set up the title of the other tenant in common as a defense to the action for possession.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

McNutt & Hannon, for Appellant.

George E. Overmyer, for Respondent.

SHAW, J.—The action is to recover damages arising from a breach of covenants in a conveyance of land. Judgment below was given for the plaintiff, defendant's motion for a new trial was denied and she has appealed from the judgment and order.

On March 8, 1899, the defendant executed a deed purporting to convey to plaintiff a section of land in Kansas for the price of three thousand five hundred dollars. The covenant in the deed, which it is herein claimed was broken, is in the following clause thereof: "And the said Annora Marcy does hereby covenant and agree that at the delivery hereof Annora Marcy is the lawful owner of the premises above granted, and seized of a good and indefeasible estate of inheritance therein free and clear of all encumbrances and that Annora Marcy will warrant and defend the same in the quiet and peaceable possession of the said party of the second part, his heirs and assigns forever, against all persons lawfully claiming the same."

This clause includes two distinct covenants,—namely, the covenant of title or seizin, and the covenant to warrant and defend the quiet and peaceable possession. The case was tried upon an agreed statement of facts which was embodied in the findings. It appears that Annora Marcy never had any title to the land. Her immediate grantor had previously conveyed it to John Eck, Maude Eck Maxwell, and Eva Bryan, whose deed was duly recorded prior to the deed to Marcy. The covenant of seizin was therefore broken at the time it was made. (*Lawrence* v. *Montgomery*, 37 Cal. 188; *Gross* v. *Kierski*, 41 Cal. 115.) An action could have been maintained against the defendant for this breach immediately after the execution of the deed. The deed was executed in the state of Indiana. Annora Marcy was not in California until the year 1900. Since that time she has not been out of this state. Such action would have been barred by the statute of limitations of this state after the year 1902. (Code Civ.

Proc., secs. 339, 351.) The plaintiff has recognized this from the beginning and, accordingly, this action is avowedly based solely on the covenant to warrant and defend the quiet and peaceable possession. The part of the defendant's brief which is devoted to a discussion of the different rules of law respectively applicable to these distinct covenants need not be further noticed.

There is no breach of the covenant for quiet and peaceable possession of land until there has been an eviction by the true owner, or an assertion by him of his paramount right in such a manner that the holder through the covenantor is compelled to yield possession or buy the outstanding superior title. (*McGary* v. *Hastings,* 39 Cal. 366, [2 Am. Rep. 456] ; *Playter* v. *Cunningham,* 21 Cal. 233; *McAlester* v. *Landers,* 70 Cal. 82, [11 Pac. 505] ; *Levitzsky* v. *Canning,* 33 Cal. 306.) As no cause of action accrues until a breach occurs, it follows that the statute of limitations upon an action for breach of this covenant begins to run only from the time of such breach. In this case the eviction did not take place until February 21, 1910. This action was begun on July 15, 1910. It is not claimed on this appeal that the action is barred as an action upon the covenant to warrant and defend the quiet and peaceable possession. The main contention is that the damages are excessive.

The plaintiff paid to the defendant the sum of three thousand five hundred dollars, as the purchase price of the land. The eviction was upon a judgment in favor of the true owners in an action in the district court of Gove County, state of Kansas, against one Carleton, grantee of the land from McCormick by a deed containing a like covenant. Mc-Cormick was vouched to warranty therein by Carleton, and thereupon appeared and defended said action. He paid five hundred dollars for attorney's fees and costs in that defense. Carleton was ousted from possession and thereafter and before this suit was begun, McCormick, on Carleton's demand, satisfied his own covenant to Carleton and was discharged from further liability th r om. the court in the case at bar gave judgment agai  Marcy for four thousand dollars, with interest from the  ate of the eviction.

The Civil Code provides that the measure of damages for a breach of the covenant of warranty, or of quiet enjoyment,

in a grant of an estate in real property, is: 1. The price paid to the grantor, or, if the breach is partial only, such proportion of the price as the value of the property affected by the breach bore at the time of the grant to the value of the whole property; 2. Interest for the time during which the grantee derived no benefit from the property, in this case the time since the eviction, not exceeding five years; and 3. Any expenses properly incurred by the covenantee in defending his possession. (Civ. Code, sec. 3304.) This was also the rule of damages in this state before the enactment of the code. (*McGary* v. *Hastings*, 39 Cal. 369, [2 Am. Rep. 456].) Under this rule the damages allowed were not excessive.

The defendant claims that, under the peculiar circumstances of this case, the rule of damages above stated does not apply. It appears that McCormick sold the land to Carleton for two thousand dollars and that after the eviction he satisfied Carleton's demand for damages for breach of his own warranty to Carleton by the payment of two thousand dollars. Upon these facts it is insisted that the damages here allowed are one thousand five hundred dollars too much.

It seems to be a sufficient answer to this proposition to say that the code, as we have seen, has declared that the measure of damages for a full breach of such covenant "in a grant of an estate in real property" is "the price paid to the grantor." If the proposition advanced is correct, the measure of such damages would not be the price paid to the grantor; it would be the sum for which the grantee afterward sold the land. The claim is contrary to the law as laid down in the code and which is therefore binding on the courts of this state.

The measure of damages being thus established by the code, a discussion of the reasons on which it is founded is unnecessary. We may say, however, that the code measure was the one generally, if not universally, prevailing prior to its enactment. (*McGary* v. *Hastings*, 39 Cal. 366, [2 Am. Rep. 456].) If any other standard than that arising from the original transaction were taken, many difficulties and distinctions would arise. The land might afterward rise or decline in value, or valuable permanent improvements might be affixed thereto. The grantee might sell it with or without covenants, or at a price higher or lower than he paid, or greater or less

than its actual value at the time, or he might dispose of it by gift. Granting with covenants, he might settle with the second or subsequent grantee for less than the price at the second sale. These contingencies would present the case in different aspects and no general rule would seem to be possible. They have been involved, and considered from time to time, in cases before the courts. The conclusion of Livingstone, J., concurring with Kent, J., in *Staats* v. *Ten Eyck,* 3 Caines, (N. Y.) 111, [2 Am. Dec. 254], a case where the land had greatly increased in value, is that "However inadequate a return of the purchase money must be in many cases, it is the safest measure that can be followed as a general rule." This is the general effect of all the cases.

Defendant suggests that · if Carleton had sued Marcy directly on her covenant to McCormick, as he might have done, since this covenant runs with the land, his recovery would have been limited to the two thousand dollars he had paid for the land, with interest and expenses, and from this she argues that the anomaly of allowing McCormick to recover more should not be permitted. The question of the measure of damages in an action by Carleton against Marcy is not here involved and we cannot determine it. Even if it be as suggested, it does not appear to us that the conclusion defendant seeks would necessarily follow, nor that it would justify or require a disregard of the express provision of the code.

It is further claimed that the eviction was not complete, that it embraced only a two-thirds interest in the land, that the breach of the covenant was only partial and that only two-thirds of the purchase money should be allowed as damages. We think this claim is not tenable.

According to the facts agreed upon and found, the paramount title was vested in Eva Bryan, John Eck, and Maude Eck Maxwell at the time of the sale to McCormick, and until the suit thereon, above mentioned, against Carleton was begun. The plaintiffs in that suit were John Eck and Maude Eck Maxwell. Eva Bryan was named as defendant and it was alleged that she claimed a one-third interest, but had no right thereto. She was not served with process and did not appear in the action. The judgment therein rendered was not valid as to her. From this it is argued that Carleton

might have remained in possession of the one-third interest as tenant in common and that the ouster was only of the two-thirds, and that the damages should be reduced accordingly.

Where a covenantee in such a deed, or one who derives title to the land from him, is sued for possession by a person claiming a paramount title, such defendant may give notice of the suit to any previous covenantor under whom he derives title and request him to come in and defend the title he warranted. This proceeding is called a "voucher to warranty." The covenantor so vouched in may then appear in the action and defend the same. And whether he appears or not, he is bound by the judgment rendered in the action. It is conclusive upon the person thus vouched in, with respect to the superiority of the adverse title asserted by the plaintiff in the action. (2 Sutherland on Damages, secs. 614, 615; Rawle on Covenants for Title, secs. 117, 119.) When Carleton was sued by the holders of the paramount title, he served written notices upon McCormick and Annora Marcy, respectively, as warrantors of title and quiet possession, demanding of them, respectively, that they come in and defend the same in said action, and delivered to each a copy of the complaint filed therein. McCormick, as before stated, responded to the notice, appeared to the action, and participated in the defense. Annora Marcy took no action in the case. The judgment was that the plaintiffs in the action,—namely, John Eck and Maude Eck Maxwell had a perfect title to the land, that the defendants had no estate or interest therein, that they be forever barred from asserting any interest therein adverse to said plaintiffs, and that said plaintiffs recover the possession thereof from Carleton. This proceeding makes the judgment conclusive upon Annora Marcy as to the whole estate. No evidence to the contrary need have been received, and the finding of the facts showing title to one-third in Eva Bryan was irrelevant. It cannot affect the rights of the parties who are conclusively bound by the judgment. Moreover it was, in effect, a judgment in favor of Eva Bryan against Carleton. One tenant in common may recover possession of the whole estate against all persons except his cotenants, and his recovery inures to the benefit of his cotenants. (*Newman* v. *Bank of California,* 80 Cal. 372, [13 Am. St. Rep. 169, 5 L. R. A. 467, 20 Pac. 261]; *Touchard* v. *Crow,* 20 Cal. 162, [81 Am.

Dec. 108] ; *Hart* v. *Robertson,* 21 Cal. 348; *Mahoney* v. *Van Winkle,* 21 Cal. 583; *Treat* v. *Reilly,* 35 Cal. 129; *Spotts* v. *Hanley,* 85 Cal. 170, [24 Pac. 738].) The eviction by paramount title was complete. Carleton could derive no advantage from the right of Eva Bryan as tenant in common. He was not in privity with her. There is, therefore, no foundation for the claim that the damages were excessive.

The defendant's argument appears to be based in part upon the theory that there were good defenses which might have been made in the action against Carleton in the Kansas court, and that these defenses are in some way available here to impeach the judgment of ouster in that case. On this point it is sufficient to say that this would be a collateral attack on that judgment, and that as Annora Marcy was regularly vouched to warranty and failed to respond, she cannot now be heard to urge defenses which she might have there made. There is no suggestion that there was any fraudulent failure or refusal by Carleton or McCormick to make such defenses. We can see no reason to hold that the estoppel against Annora Marcy, from the voucher to warranty proceeding from Carleton, is not as available to McCormick, who responded thereto and who has settled with Carleton, as it would have been to Carleton himself.

In view of the law, as above stated, whereby one tenant in common may recover the whole estate against a stranger, there is no force in the argument that the attorney's fees in the Kansas case should have been disallowed because of the neglect of Carleton and McCormick to set up the title of Eva Bryan to a one-third interest as a defense in that case. Such defense would have availed them nothing, if they had attempted to present it. No other objections to this allowance are urged by appellant.

The judgment and order are affirmed.

Angellotti, J., and Sloss, J., concurred.