## LEO F. BRAUN v. FRANK HAMACK.[1]

January 5, 1940.

No. 32,097.

*Sawyer & Caulfield,* for appellant.

*H. G. Haugland* and *Oscar G. Haugland,* for respondent.

GALLAGHER, CHIEF JUSTICE.

On March 15, 1937, plaintiff commenced excavating on a lot in the city of Minneapolis thereby causing a building on an adjacent lot owned by defendant and the soil thereunder to start collapsing. The building inspector of the city of Minneapolis ordered defendant to build a foundation under the structure and to brace and support the building and ground. Plaintiff notified defendant of the condition resulting from the excavation, demanded proper protection, and offered free entry on his premises for that purpose. Defendant having refused, plaintiff braced and shored defendant's property at a substantial cost as he was required to do in order safely to proceed with building operations. This action was instituted to recover the money thus expended.

[1]Reported in 289 N. W. 553.

The foregoing facts and others not here material were set forth in plaintiff's complaint, to which were attached certain ordinances of the city of Minneapolis. Defendant demurred on the ground that the complaint does not state a cause of action. The trial court sustained the demurrer, and plaintiff appeals from a judgment thereafter entered.

The question presented is: Can an excavating landowner recover from the owner of adjoining burdened land sums expended by the former to brace and shore the latter's property when excavation could not be safely carried on without such precautions, and when, after having been given notice of the plan to excavate, the owner of the burdened land has refused to provide necessary protection?

Rules governing related problems are fairly well established. Every landowner has a right to have his land supported in its natural state by the land adjoining, and one who excavates or improves the adjoining land is under a correlative duty so to use his land that his adjacent neighbor's soil will not crumble or cave in of its own weight. Tiffany, Outlines of Real Property, § 258; Schultz v. Bower, 57 Minn. 493, 59 N. W. 631, 47 A. S. R. 630; Young v. Mall Inv. Co. 172 Minn. 428, 215 N. W. 840, 55 A. L. R. 461; Gilmore v. Driscoll, 122 Mass. 199, 23 Am. R. 312; Bissell v. Ford, 176 Mich. 64, 141 N. W. 860; Korogodsky v. Chimberoff, 256 Ill. App. 255; Transportation Co. v. Chicago, 99 U. S. 635, 25 L. ed. 336; Thompson, Real Property, § 549. Where the adjacent neighbor's land is not in its natural state but is burdened by buildings or other additional weight in the absence of which the excavating or improvement would not cause it to sink, the excavator need only exercise due care in conducting his operations. Young v. Mall Inv. Co. 172 Minn. 428, 215 N. W. 840; Hickman v. Wellauer, 169 Wis. 18, 171 N. W. 635; First Nat. Bank v. Villegra, 92 Cal. 96, 28 P. 97; Korogodsky v. Chimberoff, 256 Ill. App. 255; Davis v. Sap, 20 Ohio App. 180, 152 N. E. 758.

The particular problem before us has not been decided by this court. Appellant relies on Eads v. Gains, 58 Mo. App. 586, where it was held on facts almost identical with those before us that a

cause of action could be implied because the defendant committed a common-law breach of duty in failing to sustain his wall, thus making it necessary for plaintiff to do so in order to protect his interests. The effect of that decision is considerably weakened by Flanagan Bros. Mfg. Co.. v. Levine, 142 Mo. App. 242, 125 S. W. 1172, where, although attempt was made to distinguish the Eads case, the Missouri court held that since one excavating on his lot was not bound to shore a building on an adjoining lot in order to protect such building he could not recover for the expense of shoring the same, the work not being done at the owner's request.

Another case relied on by appellant is Christensen v. Mann, 187 Wis. 567, 204 N. W. 499, 41 A. L. R. 1192. It is of little persuasiveness here because the adjoining landowners had there entered into an agreement in advance whereby the work was to be paid for by the person legally obligated to do it.

What seems to be the better rule and the one we prefer to follow was expressed by an Illinois court (Korogodsky v. Chimberoff, 256 Ill. App. 255, 258) in the following language:

"The one making the improvement, has a common-law right to go upon the premises of the other for the purpose of shoring such building in order to protect property, when it is necessary, to prevent damage by reason of an excavation, but this is done at his own expense and cost. We are not in accord with the rule stated in the Missouri cases, but think the correct rule is found in the case of First Nat. Bank of San Francisco v. Villegra, 92 Cal. 96, 28 P. 97."

This statement is to be found in the California case cited in the above quotation [92 Cal. 99]:

"It clearly appears that plaintiff expended this money for his own benefit and his own advantage, and not for the benefit and use of the defendant. A party cannot of his own volition create an obligation in his own favor by doing some act for his own interests, and the necessity for which was caused by himself. This is in no sense an action brought for the recovery of money advanced for and to the use of defendant. No legal duty rested

upon the defendant to perform the work for which this money was expended, and plaintiff cannot create for himself the position of creditor against the will of the alleged debtor."

See also Neyman v. Pincus, 82 Mont. 467, 267 P. 805, and Davis v. Sap, 20 Ohio App. 180, 152 N. E. 758, where the problem is discussed and statements similar to those quoted may be found.

Some cities (including Minneapolis) have ordinances requiring one intending to excavate on his own land to give the adjacent landowner notice thereof. If such notice be given and the adjoining landowner does not take adequate precautions to protect his building, the excavator is not liable for damages if he exercises due care. Carty v. Blauth, 169 Cal. 713, 147 P. 949; Neyman v. Pincus, 82 Mont. 467, 267 P. 805; Schaefer v. Hoffman, 198 Wis. 233, 223 N. W. 847. Further, the excavator may recover damages if the building on the improved land falls because of the failure of the owner to bolster it. Lyons v. Walsh, 92 Conn. 18, 101 A. 488, L. R. A. 1917F, 680.

One in the position of plaintiff, having the remedies mentioned and perhaps others, cannot, we feel, prevail in an action to recover money which he was under no legal or moral obligation to expend. True, it is alleged that he was required to brace and shore defendant's property in order safely to proceed with building operations. But no such action would have been required if plaintiff had not insisted on proceeding with such operations. Can he now base a claim for recovery on a necessity caused in part at least by himself? We think not. The money was expended without legal compulsion and in the absence of an unavoidable urgency. Therefore, plaintiff acted as a volunteer, and we know of no legal principle upon which to premise an obligation, contractual or otherwise, on the part of defendant to reimburse him.

Affirmed.

STONE, JUSTICE (dissenting).

Essential to this decision is one of the following conclusions: (1) That defendant was under no duty in the premises or (2) that

plaintiff expended his money as a mere volunteer. It is respectfully submitted that the complaint shows both to be without support.

■ The building code of Minneapolis, so far as relevant, is pleaded. It requires all buildings to have proper foundations. Defendant's had none. It is averred that the building inspector, in the exercise of his authority, "ordered defendant" to build the foundation, some or all of which, or a substitute for which, plaintiff was compelled to construct as result of defendant's refusal. So, taking the complaint as true, defendant was under a duty at least so to support his own building as to prevent its falling into plaintiff's lawful excavation. Furthermore, defendant's obligation was a public duty as well as one owing to plaintiff as an individual.

Building code and inspector's order are both within the power of the city under the rule of Young v. Mall Inv. Co. 172 Minn. 428, 432, 215 N. W. 840, 55 A. L. R. 461. That aside, it was defendant's common-law duty to keep his own building from falling into plaintiff's excavation. Plaintiff's only duty was to support defendant's unburdened soil. The former was under no duty to support the latter's building. So, by as much as plaintiff has reasonably supported it, he has performed a duty which was defendant's. Of that more later.

■ In performing the work here in question, plaintiff was protecting his right to excavate. It is therefore submitted that he was not a volunteer. His act was compelled by necessity arising from defendant's wrongful nonaction. He was not an officious intermeddler in the affairs of another. Restatement, Restitution, § 113.

If more authority is needed to show that in unanimous judicial opinion plaintiff was not a volunteer, it is not lacking. In Kelly v. Tyra, 103 Minn. 176, 114 N. W. 750, 115 N. W. 636, 17 L.R.A.(N.S.) 334, we defined a volunteer as "one who introduces himself into matters which do not concern him, and does, or undertakes to do, something which he is not legally or morally bound to do, or which is not in pursuance or protection of any

interest." From that statement there is no dissent, as shown by the numerous cases cited under the heading of "volunteer" in Wd. & Phr. (1, 2, & 3 ser.).

The arguments in support of the conclusion that plaintiff was a volunteer are that the work for which compensation is now sought "would not have been required if plaintiff had not insisted on proceeding" with the excavation, and that there was an "absence of an unavoidable urgency."

The first argument cannot stand. It seems to suggest that plaintiff's own action is the cause of his loss. It would operate equally to bar recovery after defendant's building had fallen and caused damage to plaintiff's land. Forgotten is the fact that plaintiff has a legally protected interest in the free use and enjoyment of his own premises, including the making of excavations in the manner revealed by the complaint. And the argument ignores also the fact that plaintiff's right to excavate means that he is protected in "proceeding with such operations."

The fact that plaintiff was excavating in no way lessened defendant's duty. Because plaintiff was acting within his right, the case must stand as though there were no excavation and defendant's building were about to fall on plaintiff's land. It is clear that in law plaintiff's excavation is occasion and not cause, and that defendant's inadequately supported building is sole cause of the loss to plaintiff.

As to the argument that there was "absence of an unavoidable urgency," it is sufficient to answer that that cannot be decided in ruling upon this demurrer. Such urgency is alleged, in our view, notwithstanding the fact that the building would not collapse but for the excavation. Whether it can be proved depends merely upon whether plaintiff's evidence can show that, without the expenditure, his land would have been cluttered with defendant's building.

If, as suggested, the necessary supports for this decision do not exist, where is the case left? Must it not fall within the principles that where one person (a) discharges a duty owed by another or (b) pays money wrongfully required of him to pre-

vent serious injury to the conduct of his business or the enjoyment of his property, in such circumstances that he is more than a volunteer, he is entitled to recover upon quasi contract?

Illustrative of the first principle are the cases where a relative, even though distant, defrays the funeral expenses of a wife. In such cases the surviving husband is held as for money paid for his use. The payor is not considered an officious intermeddler, and so is more than a volunteer. He is entitled to reimbursement because the primary duty is that of the husband. Keener, Quasi-Contracts, p. 341, *et seq.*

The cases falling within the second principle are numerous. In Joannin v. Ogilvie, 49 Minn. 564, 52 N. W. 217, 16 L. R. A. 376, 32 A. S. R. 581, we held that one who, in order to obtain a loan, paid money in discharge of an unfounded lien against his property, could recover the money as paid under duress. Mr. Justice Mitchell, in holding that the payment was not voluntary, said (49 Minn. 569) :

"The distinguishing and ruling fact in this case was the active interference with [the payor's] property by filing a claim for a lien which effectually prevented the [payor] from using it for the purposes for which he had immediate and imperative need."

In Swift Co. v. United States, 111 U. S. 22, 4 S. Ct. 244, 28 L. ed. 341, it was held that a plaintiff who had paid money in compliance with the wrongful demands of public officers, in circumstances where his only choice was to pay or discontinue business, was entitled to quasi contractual relief.

The object of the quasi contractual process is so to fill the interstices of tort and contract law as to prevent unconscionable enrichment of one at the expense of another. Such a case of unconscionable enrichment is presented here. Anyone has the power to refuse performance of a legal duty. But if the duty is owed to one who performs it himself in order to avoid imminent danger to his own interests, he may recover. By performing another's duty he has conferred a benefit. It is submitted that in the circumstances here presented its retention would be unjust.

If a remedy is denied plaintiff, defendant will be unjustly enriched at plaintiff's expense to an extent measured by the reasonable disbursements of the latter in performing the duty which rested upon defendant. Therefore, I submit that it was error to sustain the demurrer and that the complaint states a cause of action for the money which plaintiff expended in putting under defendant's building a support which it was the duty of defendant to place there to protect the occupants of his own building and the public and so as not wrongfully to interfere with plaintiff's use of his own property.

No attempt is made to distinguish the cases cited in support of the majority view except for this. Absent from all of them is the specific requirement of building code and inspector's order present here. And none of them seems to have considered either the need or the means for preventing unconscionable enrichment. Arbitrarily to follow them seems to me such a refusal of adjustment to plain demand of circumstance, such an adherence to old form at the cost of new substance, such a refusal of remedy for obvious wrong that I must ask leave to protest.

HILTON, JUSTICE (dissenting).

I concur with Mr. Justice Stone.